U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

MAY 1 4 2009

TONY R. MOORE, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

## SHREVEPORT DIVISION

---

THE SHREVEPORT LOUISIANA
HAYRIDE CO., L.L.C.

CIVIL ACTION NO. 07-0868

versus

JUDGE TOM STAGG

JOSEPH DAVID KENT, ET AL.

---

## MEMORANDUM RULING

Before the court is the Shreveport Louisiana Hayride Co., L.L.C.'s ("the Hayride") motion for partial summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Record Document 46. Based on the following, the Hayride's motion for partial summary judgment is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

### A. Procedural History.

On May 22, 2007, the Hayride filed suit against Joseph David Kent ("Kent") and the Louisiana Hayride Inc. ("LHI")(collectively "the defendants") for federal trademark infringement, federal trademark dilution, federal unfair competition,

1

federal false advertising and false endorsement, injury to business reputation of trade names and marks, unfair competition, and unjust enrichment under the Lanham Act, 15 U.S.C. § 1051 et seq and Louisiana Revised Statute 51:211 et seq. See Record Document 1 at 28-31. The Hayride seeks to enjoin the defendants from affiliating themselves with or using any "Louisiana Hayride" mark and the destruction of all copies and reproductions of any items bearing the "Louisiana Hayride" or associated marks. See id. at 31-33. The defendants contend that the Hayride does not have a valid right or ownership interest in the "Louisiana Hayride" mark, that any of the Hayride's relevant registered trademarks are invalid and subject to cancellation, and that the Hayride has abandoned any interest in the "Louisiana Hayride" mark. See Record Document 11.

In a memorandum order dated February 10, 2009, Magistrate Judge Karen Hayes granted the Hayride's motion to amend its complaint. See Record Document 38. In its amended complaint, the Hayride contends that because LHI is the alter ego of Kent, this court should "pierce the corporate veil" and hold Kent personally liable for LHI's alleged infringement of the Hayride's marks. See Record Document 39.

On April 9, 2009, the Hayride filed the instant motion for partial summary judgment on the sole issue of liability. See Record Document 46. The defendants

2

then filed a memorandum in opposition,[1] and the Hayride replied.  See Record Documents 50 and 52.

**B.    Facts.[2]**

### 1.    Kent And LHI.

The facts underlying this dispute date back to the 1950s when Elvis Presley was a regular performer at the KWKH Louisiana Hayride held in the Municipal Auditorium in Shreveport, Louisiana.  On November 6, 1954, Presley contracted to appear on the Louisiana Hayride for fifty-two consecutive Saturday nights. Presley later purchased all of his obligations from KWKH, ending KWKH's right to use his name, likeness and sound recordings for any purpose.  Nevertheless, multiple sound recordings were produced from the Louisiana Hayride, which for

---

[1]The defendants' memorandum in opposition is only referenced for the sake of completeness.  It neither bolsters the defendants' position in this litigation nor aids this court in determining the merits of the underlying motion for partial summary judgment.  The memorandum consists of three components: (1) one page of irrelevant Louisiana summary judgment law; (2) one page containing unsupported affirmative defenses that were "copied and pasted" from the defendants' answer; and (3) a brief conclusion.  The defendants failed to oppose the Hayride's claims for relief, failed to cite a single case (other than the irrelevant Louisiana cases), and failed to present any competent summary judgment evidence in support of their affirmative defenses.  The memorandum amounts to nothing more than conclusory allegations, speculation, and unsubstantiated assertions.

[2]As the defendants failed to provide a statement of facts, the court was left with no choice but to rely on those supplied by the Hayride in its complaint and briefs.

some time were possessed by Kent's father ("David Kent"). Although David Kent physically possessed the recordings, he was never licensed to reproduce or distribute the recordings.

In the late 1970s, David Kent starting operating a show called "Hayride USA" in Bossier Parish, Louisiana.[3] He also registered the "Louisiana Hayride" trademark with the Louisiana Secretary of State. In 1980, he sold all of his Elvis Presley recordings to third parties. In 1987, he sold the remainder of his recordings and the Louisiana-registered trademark to William Starnes ("Starnes"). Starnes made a down payment of $50,000 with the balance on credit. To secure financing from Pioneer Bank ("Pioneer"), Starnes pledged his recordings and the Louisiana-registered trademark as collateral.[4] Starnes was also required to obtain co-signers on the note: Bobby and Ray Williams.

When Starnes defaulted on the note to Pioneer (and on his credit payments to David Kent), the Williams brothers paid the note and replaced Pioneer as Starnes's creditor. The Williams brothers then forced a judicial sale of the assets. Having previously obtained a default judgment against Starnes in Caddo Parish District

---

[3]Hayride USA had no connection to the KWKH Louisiana Hayride.

[4]Pioneer perfected its security interest in the "Louisiana Hayride Assets."

Court, David Kent intervened in the Williams brothers' suit. On January 16, 1990, Judge Carl Stewart found that the Williams brothers' security interests were superior to that of David Kent. Accordingly, the Williams brothers purchased the Hayride recordings and the Louisiana-registered mark at a judicial sale on April 29, 1992.

David Kent died on January 20, 1992. The sworn descriptive list filed in his succession proceedings on March 11, 1992 did not mention any Louisiana-registered marks or recordings of any kind. On October 3, 1995, some three year and a half years later, Kent caused an amended judgment of possession to be filed describing the marks and recordings at issue. In 2005, Kent approached 1st Capital Corp., a venture capital group, with the intention of forming a partnership to sell "Louisiana Hayride" merchandise and to organize concerts and other events. He was successful, resulting in the formation of "Louisiana Hayride Inc." ("LHI"). Kent sold his purported rights in the Hayride recordings to LHI in exchange for $300,000 and a forty percent interest in the new corporation. LHI created the website "www.louisianahayrideinc.com" and sold merchandise containing the "Louisiana Hayride" mark. In November 2007, Kent purchased the assets and stock of LHI from all the other stockholders. On October 18, 2008, Kent held a musical review at the Choctaw Casino in Durant, Oklahoma entitled "Tribute to the Louisiana Hayride."

## 2.   The Hayride.

The Hayride is a Louisiana limited liability company that produces live musical reviews and sells goods and other services.  Since the early 1990s, the Hayride has owned several federally protected trademarks such as the "The Shreveport Louisiana Hayride" and "Louisiana Hayride."  The Hayride also maintains the website "www.louisianahayride.com" to provide information about their Louisiana Hayride activities and other contact information.  The Hayride's marks are well known, respected by customers, and represent the Hayride's commitment to provide high quality products and services. During 2008, the Hayride, through its licensees, produced weekly Louisiana Hayride shows.

## II.  ANALYSIS

## A.   Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). When the movant bears the burden of proof on a claim for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond

peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). The plaintiff's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). If the non-movant opposes summary judgment based on an affirmative defense for which it bears the ultimate burden of persuasion at trial, it must present admissible evidence to sustain a favorable finding on each element of the defense. See Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and *unsubstantiated assertions* are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (emphasis added).

All facts and inferences are viewed in the light most favorable to the non-moving party, and all reasonable doubts are resolved in that party's favor. See Puckett v. Rufenacht, Bromagen & Hertz, Inc., 903 F.2d 1014, 1016 (5th Cir.

7

1990). If factual issues or conflicting inferences exist, the court is not to resolve them; rather, summary judgment must be denied. See id.

## B. Discussion.

### 1. Federal Trademark Infringement.

To succeed in its trademark infringement claim, the Hayride must show: (1) that it has a protected right in its mark and (2) that there is a likelihood of confusion between its mark and the infringing mark. See Paulsson Geophysical Servs., Inc. v. Sigmar, 529 F.3d 303, 309 (5th Cir. 2008). To meet the first element, the Hayride has provided certificates of registration of its marks "The Shreveport Louisiana Hayride" and "Louisiana Hayride" issued by the United States Patent and Trademark Office. See Record Document 46, Ex. L. The certificates indicate that the marks were first used in 1993. See id. "Any registration . . . shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark . . . ." 15 U.S.C. § 1115(a). In opposition, the defendants merely state that "[m]aterial issues of fact exists [sic] as to the very nature of the complaint i.e., whether [the Hayride] actually has a valid trademark." Record Document 50 at 2. As mentioned above, unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment. See Ramsey, 286 F.3d at

269. Accordingly, this court finds that the Hayride has a protected right in its marks.

The Hayride must also prove that there is a likelihood of confusion between its marks and the infringing marks.[5] To determine whether a likelihood of confusion exists, courts consider the following nonexhaustive list of factors: (1) the strength of the plaintiff's mark; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of the retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; (7) any evidence of actual confusion; and (8) the degree of care employed by consumers. See Paulsson, 529 F.3d at 310; Am. Rice, Inc. v. Producers Rice Mill, Inc., 518 F.3d 321, 329 (5th Cir. 2008). "No one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" Paulsson, 529 F.3d at 310. "Likelihood of confusion

---

[5]Whether a likelihood of confusion exists is generally regarded as a question of fact. See Marathon Mfg. Co. v. Enerlite Prods. Corp., 767 F.2d 214, 217 (5th Cir. 1985). However, district courts may make "a single finding of fact as to likelihood of confusion based on underlying facts which were either not substantially in dispute or left to the district court to decide from the voluminous record on submission." Id.; Matter of Placid Oil, 932 F.2d 394 (5th Cir. 1991) ("If a trial on the merits will not enhance the court's ability to draw inferences and conclusions, then a district judge properly should 'draw his inferences without resort to the expense of trial.'").

is synonymous with a probability of confusion, which is more than a mere possibility of confusion." Elvis Presley Enters., Inc. v. Capece, 141 F.3d 188, 193 (5th Cir. 1998). "The digits are a flexible and nonexhaustive list. They do not apply mechanically to every case and can serve only as guides, not as an exact calculus." Paulsson, 529 F.3d at 311.

### a. Strength Of The Hayride's Mark.

The strength of a mark is determined by considering whether the mark is classified as generic, descriptive, suggestive, or arbitrary and fanciful and by considering the mark's standing in the marketplace. See Am. Rice, 518 F.3d at 330. Generic marks are the weakest; arbitrary and fanciful marks are the strongest. See id. While an arbitrary mark uses a common word in an unfamiliar way, a fanciful mark is not a real word, but is invented solely for the purpose of identifying a particular product. See Sport Supply Group Inc. v. Columbia Cas. Co., 335 F.3d 453, 461 (5th Cir. 2003). Both arbitrary and fanciful marks successfully distinguish their products and are accorded more protection under trademark law. See id.

"The Shreveport Louisiana Hayride" and "Louisiana Hayride" marks are at least suggestive, if not arbitrary and fanciful. Although each word is individually generic, their combination clearly suggests or identifies the radio broadcasts from the Shreveport Municipal Auditorium. Additionally, the marks have reached

incontestable status as they have been in commerce since 1993. See Record Document 46, Ex. L; Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 105 S. Ct. 658 (1985) ("Incontestable status provides, subject to the provision of § 15 and § 33(b) of the Lanham Act, 'conclusive evidence of the registrant's exclusive right to use the registered mark. . . .'"). Based on their registration and years of use, the strength of the marks are presumed. See Am. Rice, 518 F.3d at 330. Accordingly, the strength of the Hayride's marks weighs in favor of a likelihood of confusion.

### b. Similarity Of The Marks.

The degree of similarity between marks "is determined by comparing the marks' appearance, sound, and meaning." Elvis Presley Enters., 141 F.3d at 201. Courts must consider the overall impression rather than simply comparing individual features of the marks. See Exxon Corp. v. Tex. Motor Exch. of Houston, Inc., 628 F.2d 500, 505 (5th Cir. 1980). It is clear that Kent and LHI used the exact "Louisiana Hayride" mark. First, LHI's corporate name is Louisiana Hayride Inc. Second, LHI's former website was "www.louisianahayrideinc.com." The website depicted a "dancing Elvis"[6] drawing next to the words "Louisiana Hayride." It is

---

[6]Due to LHI's use of this "dancing Elvis," the owners of the "Elvis" and "Elvis Presley" marks wrote a cease and desist letter to Kent demanding that he

11

evident that LHI utilized both extremely similar marks and the exact mark owned by the Hayride. Accordingly, the similarity of the marks weighs heavily in favor of a likelihood of confusion.

### c.     Similarity Of The Products Or Services.

"The greater the similarity between the products and services, the greater the likelihood of confusion." Elvis Presley Enters., 141 F.3d at 202. Although direct competition between the parties' services or products is not required, when the junior user's services are in the same market as the senior user, the danger of affiliation or sponsorship confusion increases. See id.

While the Hayride provides a variety of musical services and sells merchandise (shirts, caps, coffee mugs, plastic cups, etc.), it primarily produces live musical revues and performances. See Record Document 46 at 8. Kent and LHI sell products and services and produce and advertise live musical performances. Although his website is no longer active, Kent is allegedly producing a "Tribute to the Louisiana Hayride" show. Accordingly, it is clear that the similarity of products and services factor weighs heavily in favor of a likelihood of confusion.

cease all further use of any Elvis mark in connection with his business. See
Record Document 46, Ex. O.

### d. Identity Of Retail Outlets And Purchasers.

"Dissimilarities between the retail outlets lessen the possibility of confusion, mistake, or deception." <u>Moore Bus. Forms, Inc. v. Ryu</u>, 960 F.2d 486, 490 (5th Cir. 1992). The Hayride claims that the consumers of its goods and services are the same consumers that utilize the goods and services of the defendants. <u>See</u> Record Document 46 at 10. Such consumers can be generally identified as "classic country and western music fans although they are generally an older audience." <u>Id.</u> Although the court agrees with the Hayride that the identity of the parties' purchasers are likely similar, it has not produced sufficient summary judgment type evidence on the issue.

The Hayride has produced evidence that both parties utilize similar marketing avenues; specifically, they both utilized the internet and live musical performances to drive sales. Accordingly, the identity of retail outlets and purchasers weighs in favor of a likelihood of confusion.

### e. Similarity Of Advertising Media.

Generally, "the greater the degree of overlap in the marketing approaches of the two entities, the greater the likelihood of confusion." <u>Am. Century Proprietary Holdings, Inc. v. Am. Century Cas. Co.</u>, 295 F. Appx. 630, 637 (5th Cir. 2008) (unpublished); <u>Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.</u>, 83

F.Supp.2d 810, 827 (S.D. Tex. 1999). Again, both parties utilized the internet and live musical performances to generate interest in their businesses. Accordingly, the similarity of the advertising media weighs in favor of a likelihood of confusion.

### f.    Intent Of Defendants.

"Proof of an intent to confuse the public is not necessary to a finding of a likelihood of confusion." Elvis Presley Enters., 141 F.3d at 203. "[I]n determining a defendant's intent, evidence of the defendant's actions is highly probative and should be considered." Id. A defendant's "actions speak louder than its words." Id; Oreck Corp. v. U.S. Floor Sys., Inc., 803 F.2d 166, 173 (5th Cir. 1986).

The Hayride directs the court to the mission statement of LHI to prove its intent. The statement reads:

> [LHI]'s mission is to selectively develop, package, and market products from and related to the KWKH Louisiana Hayride radio program in a manner that establishes and enhances a strong brand imagery for the new [LHI] and effectively broadens its base of consumers to include a whole new generation of listeners/fans while chronicling, preserving and showcasing the rich cultural history of the Louisiana Hayride.

Record Document 46, Ex. G at 11. It is clear that LHI intends to illegally benefit from the Hayride's marks. Accordingly, the intent of LHI weighs heavily in favor of a likelihood of confusion.

14

### g.    Actual Confusion.

Evidence of actual confusion is generally held to be the best evidence of a likelihood of confusion. See Am. Rice, 518 F.3d at 333. The Hayride produced evidence that fans and show sponsors were confused over who was producing the show. Arthur Warwick testified in his affidavit that he received numerous emails indicating actual confusion as to the source of the Hayride marks. See Record Document 46, Ex. A. Bud Christian testified by affidavit that an unpaid musician on one of Kent's Hayride shows sought payment from the Hayride for his performance. See Record Document 46, Ex. C. The musician was obviously confused as to the operator of the Louisiana Hayride show. Accordingly, the fact that actual confusion exists weighs in favor of a likelihood of confusion.

### h.    Degree Of Care Exercised By Potential Purchasers.

The Hayride has not presented summary judgment evidence or argument regarding the degree of care exercised by potential purchasers. Accordingly, the court considers this factor as neutral.

### i.    Weighing The Digits Of Confusion.

Based on the foregoing analysis, it is obvious that there is likelihood of confusion between the marks utilized by the Hayride and those utilized by LHI and Kent. All of the factors discussed weigh in favor of a likelihood of confusion or are

neutral. The Hayride has proven both elements of its trademark infringement claim under the Lanham Act. Accordingly, the Hayride's motion for partial summary judgment based on trademark infringement is **GRANTED**.

## 2. Federal Trademark Dilution.

"[T]he owner of a famous mark that is distinctive . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). To determine whether a mark is likely to cause dilution by blurring, courts may consider all relevant factors, including the following: (1) the degree of similarity between the mark and the famous mark; (2) the degree of inherent or acquired distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the user of the mark intended to create an association with the famous mark; and (6) any actual association between the mark and the famous mark. See 15 U.S.C. § 1125(c)(2)(B). "'Dilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the

16

reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C).

"Trademark dilution is the weakening of the ability of a mark to clearly and unmistakably distinguish the source of a product." Scott Fetzer Co. v. House of Vacuums Inc., 381 F.3d 477, 489 (5th Cir. 2004). While blurring involves a diminution in the uniqueness or individuality of the mark because of its use on unrelated goods, tarnishing occurs when the mark is linked to a product of shoddy quality resulting in a lessened public perception of the authentic goods. See id.

The Hayride contends that the defendants' activities have diluted its marks through blurring and tarnishment. See Record Document 46 at 17. Although the Hayride did not specifically argue the elements of the "dilution by blurring" test, it has provided the court with enough summary judgment evidence to meet its burden. Specifically, Bud Christian testified by affidavit that he examined and purchased certain Louisiana Hayride products that Kent was selling at his hayride show in Oklahoma. See Record Document 46, Ex. C. at 2. These items, placed in commerce by Kent, were intended to create an association with the Hayride's famous mark. Kent's use of the mark in these circumstances diminished the uniqueness of the Hayride's mark. Accordingly, The Hayride's motion for partial summary judgment based on trademark dilution is **GRANTED**.

### 3. Federal Unfair Competition.

To prove unfair competition under federal law, the Hayride must show that the use of its marks by the defendants is likely to cause confusion among consumers as to the source, affiliation, or sponsorship of the defendants' products or services. See 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a); Scott, 381 F.3d at 483. As discussed above, there is a "likelihood of confusion" as between the parties' products and services. Accordingly, the Hayride's motion for partial summary judgment based on unfair competition is **GRANTED**.

### 4. Federal False Advertising And False Endorsement.

To establish a prima facie case of false advertising under the Lanham Act, the plaintiff must establish the following five elements: (1) a false or misleading statement of fact about a product; (2) such statement either deceived or had the capacity to deceive a substantial segment of potential customers; (3) the deception was material, in that it was likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. See Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co. Inc., 520 F.3d 393, 400 (5th Cir. 2008). In its motion for summary judgment, the Hayride did not brief this issue nor discuss the elements of a false advertising claim under the Lanham Act. Accordingly, the

18

Hayride's motion for partial summary judgment based on false advertising is **DENIED**.

Despite utilizing the term "false endorsement," it seems the Hayride is seeking relief under a "false designation of origin" theory. See Record Document 46 at 17. Under this theory, a defendant is prohibited from "palming off" a product or selling one's good under the name of a competitor. See Roho, Inc. v. Marquis, 902 F.2d 356, 359 (5th Cir. 1990). "[R]everse palming off involves reselling another's product after removing or obliterating the original label and encompasses products that have been only slightly modified." Id. at 360. In its motion for partial summary judgment, the Hayride devoted only two sentences to this cause of action. Even if the defendants "palmed off" the protected marks, the Hayride has failed to meet its burden for summary judgment purposes. Accordingly, the Hayride's motion for partial summary judgment based on "false designation of origin" is **DENIED**.

### 5. Injury To Business Reputation Of Trade Names And Marks.

A "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition

. . . ." La. R.S. 51:223.1.[7] As discussed, the Hayride has established the elements necessary to prevail on its trademark infringement and unfair competition claims. Accordingly, the Hayride's motion for partial summary judgment based on Louisiana "injury to business reputation" law is **GRANTED**.

### 6.    Unfair Competition.

"The purpose of unfair competition law . . . is threefold: (1) to protect the trademark or trade name owner's interest in claiming the benefits of its goodwill; (2) to protect the consuming public; and (3) to encourage competition. . . . " Ramsey's Mfg. Jewelers, Inc. v. Ramsey, 924 So.2d 1045, 1050 (La. App. 5th Cir. 2006) (citing Gulf Coast Bank v. Gulf Coast Bank & Trust Co., 652 So.2d 1306, 1308 (La. 1995)). To qualify for relief under Louisiana unfair competition law, a plaintiff must establish that it has a protectable propriety right in the name it seeks to exclude others from using, and there has been an infringement of that right." See id.

The Hayride has provided certificates of registration of its marks "The Shreveport Louisiana Hayride" and "Louisiana Hayride" issued by the United States

---

[7]The Hayride's state law claims do not merit lengthy consideration; a ruling on the likelihood of confusion under the Lanham Act also controls an unfair competition claim under state law. See Blue Bell Bio-Medical v. Cin-Bad, Inc., 864 F.2d 1253, 1261 (5th Cir. 1989); Moore Bus. Forms, Inc. v. Seidenburg, 619 F.Supp. 1173, 1184 (W.D. La. Sept. 27, 1985).

Patent and Trademark Office. See Record Document 46, Ex. L. The Hayride has also provided sworn affidavits evidencing multiple episodes of infringement. See id., Ex. A - D. Accordingly, the Hayride's motion for partial summary judgment based on Louisiana "unfair competition" law is **GRANTED**.

### 7. Unjust Enrichment.

In its brief, the Hayride failed to argue or address its "unjust enrichment" claim. Accordingly, the Hayride's motion for partial summary judgment based on Louisiana "unjust enrichment" law is **DENIED**.

### 8. Piercing The Corporate Veil.

In its amended complaint, the Hayride prays that "the court find that the defendant LHI is the alter ego of defendant Kent and that LHI's corporate veil of protection be pierced with regard to the sole officer and shareholder Kent. . . ." Record Document 39 at 3. "[T]he law of the state of incorporation governs the determination when to pierce a corporate veil." Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 647 (5th Cir. 2002). LHI was incorporated in Delaware. See Record Document 51 at 2.

The Hayride directs this court to Mason v. Network of Wilmington, Inc., 2005 WL 1653954 (Del. Ch., July 1, 2005) (unpublished) for a list of factors to consider in the determination of whether to pierce the corporate veil. Such factors

include whether: (1) the corporation was adequately capitalized; (2) the corporation was solvent; (3) dividends were paid; (4) corporate records were kept; (5) officers and directors functioned properly; (6) other corporate formalities were observed; (7) the dominate shareholder siphoned funds; and (8) the corporation simply functioned as a facade for the dominant shareholder. See Mason, 2005 WL 1653954 at *3. Delaware courts also require an element of fraud to pierce the corporate veil. See Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999). "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." Id.

The Hayride argues that LHI was formed to illegally utilize the Hayride's protected trademarks, that it has no bank account, and its sole shareholder, Kent, commingles corporate earnings with his own funds. See Record Document 46 at 22-23. While the Hayride's argument reaches several of the above-listed factors, it has failed to meet its burden to pierce LHI's corporate veil. Notably, the Hayride did not mention the first four factors. Accordingly, the Hayride's motion for partial summary judgment seeking to "pierce the corporate veil" is **DENIED**.

### III. CONCLUSION

Based on the foregoing analysis, the Hayride has established the elements necessary to prevail on its federal claims for trademark infringement, dilution, unfair

competition and its state law claims for injury to business reputation and unfair competition. Accordingly, the Hayride's motion for partial summary judgment is **GRANTED** as to these claims.

On the other hand, the Hayride failed to establish the elements necessary to prove its federal false advertising, federal false endorsement, and unjust enrichment claims. It also failed to meet its burden to pierce the corporate veil. Accordingly, the Hayride's motion for partial summary judgment is **DENIED** as to these claims.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this _14th_ day of May, 2009.

JUDGE TOM STAGG

23